Weldon, J.,
delivered the opinion of the court:
The claimant is a corporation organized under the laws of the State of California, and during the period of the alleged services in the transportation of the mails, operated on the Pacific coast, including the leased lines, over 10,000 miles of railroad.
The claimant accepted the terms and conditions expressed in the acts of July, 1862, entitled an act to aid in the construction of a railway and telegraph line from the Missouri Eiver to the Pacific Ocean, and to secure the Government the use of the same for postal, military, and other purposes, and in the acts amendatory thereof approved July 2,1864, March 3,1866, and July 3, 1866.
The claimant in 1864 filed amended articles of association under the laws of California, and with the aid of a grant of land and bonds issued as in said acts provided, constructed a' portion of its road and over and upon which it performed a part of the service sued for in this proceeding.
For a period more than six years prior to the 16th day of January, 1886, the claimant transmitted the mails of the United States over its road under what is called “recognized service,” and for that transportation payment has been made in full; but it is alleged, and the findings show, that during said time the claimant in addition to the transportation of the mails, postal clerks, and such persons as usually accompany mails, transported upon request of the Postmaster-General “post-office inspectors” of the Post-Office Department, for which nothing has been paid.
This suit was brought for the purpose of recovering compensation for the transportation of post-office inspectors, or special agents of the Post-Office Department.
Calculating the service at the rate charged by the company to other passengers (and which was a reasonable charge), it would amount on aided portions of the road to the sum of *434 $11,556.32 — $739.41 of wbiob accrued more than six years before tbe 16th. day of January, 1886; and over the unaided portions the sum of $14,306.83 — $642.25 of which accrued before said date.
The agents travelled on the business of the Post-Office Department during the time covered by the petition under the following authority from the Postmaster General:
“Post-Office Department,
“United States of America.

11 To whom it may concern:

“The bearer hereof (name of special or inspector) is hereby designated a post-office inspector of this Department and travels by my direction on its business.
“ He will be obeyed and respected accordingly by mail contractors, postmasters, steamboats, stages, and others connected with the postal service. Eailroads, steamboats, stages, and other mail contractors are required to extend facilities ox free travel to the bearer of this commission.
u_
“ Postmaster- GteneralP
During the time of the service in controversy the following regulations of the Post-Office Department were in force:
“ On routes where the mode of conveyance admits of it the special agents of the Post-Office Department, also post-office blanks, mail bags, locks and keys are to be conveyed without extra charge. Eailroad companies are required to convey without specific charge therefor all mail bags, post-office blanks' and stationery supplies. Also to convey free of charge all duly accredited special agents of the Department on exhibition of their credentials.”
As defining the duties of the agents the following regulation was also in force:
“ Sec. 13. Agents are authorized to open and examine the mails whenever and wherever they may find it necessary to do so. They are also empowered to enter and examine any post-office when the safety of the mails requires it or the general interests of the service demand such examination. And by virtue of their commissions all contractors, postmasters, and others in the service of the Department are bound to respect and obey the authority thus conferred.”
The question presented is, whether the claimant is entitled to recover the value of the transportation of the special agents during the time not covered by the statute of limitations.
The right to compensation for the transportation of mails *435 on tbe subsidized lines is determined by section 12 of tbe act of 1862 (12 Stat. L., 489), wbicb is as follows:
“And be it further enacted,, Tbat tbe grants aforesaid are made upon condition tbat said company shall pay said bonds at maturity, and shall keep said railroad and telegraph line in repair and use, and shall at all times transmit dispatches over said telegraph line, and transport mails, troops, and munitions of war, supplies, and public stores upon said railroad for the Government, whenever required to do so by any department thereof, and that the Government shall at all times have the preference in the use of the same for all the purposes aforesaid (at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same bind of service).”
The only discrimination as between individuals and the Government is, that the Government “shall at all times have the preference in the use of the same for all purposes aforesaid,” and with that exception, the rights of the public and individuals stand upon an equality. The land-grant portion of the claimant’s road is subject to the provisions of the act of July 27, 1866 (14 Stat. L., 239). In the land-grant road the service is to be performed subject to such regulations and restrictions as Congress may impose.
Congress has not by restriction, in the form of legislation or otherwise, affected or determined the question in controversy, and we are left to deduce from the general law and the regulations of the Post-Office Department the duty of the company as to special agents of the Department, and the consequent liability of the Government. The duty of the claimant to carry the mails imposes upon it the obligation to transport a sufficient number of persons to take care of the mails and perform the necessary labor incident to a delivery of them at the different stations of the road, and in pursuance of that obligation, railway clerks and route agents connected with the immediate care and transportation of the mails have been without question carried upon and in the mail cars; but for the transportation of post-office inspectors of the Post-Office Department, it is insisted that the company has a right to charge as for the transportation of passengers. It does not clearly appear what are the specific duties of an inspector, but it may be assumed that he does not necessarily accompany the mail in its transportation, and his agency from the phraseology of his authority *436 is not exclusively confined to an inspection of tbe mode and manner of transportation, but Ms -jurisdiction and power include postmasters and all persons connected with the postal service. He is the representative of the Post-Office Department, and all the agencies in the employ of the Department for the transportation and delivery of mail matter are subject to his inspection. He is to examine into every ramification of the postal service, and is the representative of the Department in its general agency of superintendence and control. As an instrumentality in the hands of the Postmaster-G-eneral his services are no doubt very necessary if not absolutely indispensable. During the period covered by the performance of the service for which tMs suit was brought a regulation was in force as follows:
“Eailroad companies are required to convey without specific charge therefor all mail bags, post-office blanks and stationery supplies. Also to convey free of charge all duly accredited special agents of the Department on exhibition of his credentials.”
In connection with that regulation the inspector had from the department a commission in the following form:
“Post-Office Department,
“ United States of America.

" To whom it may concern:

" The bearer hereof,-, is hereby .designated a post-office inspector of this Department, and travels by my direction, on its business. He will be obeyed and respected accordingly by mail contractors, postmasters, and all others connected with the postal service. Eailroads, steamboats, stages, and other mail contractors are required to extend the facilities of free travel to the holder of this commission.
“ Washington,-r, 1886.
“ Postmaster- General.
Continuous with the performance of the service the following regulation of the Department defining the power of the inspectors or agents was in force :
[Section 13, Postal Laws and Regulations, 1879.]
“ They are authorized to open and examine the mails whenever and wherever they may find it necessary to do so. They are also empowered to enter and examine any post-office when the safety of the mails requires it, or the general interests of *437 the serviré demands such examination. And by virtue of their commissions, all contractors, postmasters, and others in the service of the Department are bound to respect and obey the authority thus conferred.”
During the entire period those regulations were in force and every inspector of the Department had in his possession a commission specifying that the contractor, whether by railroad, steamboat or stage, was to extend to him the “facilities of free travel.” It was the construction of the Department as expressed in regulations and commissions, that the special agents should ride free on all the public conveyances of the United States having the relation of mail contractors with the Department. That was the contemporaneous construction of the contract or obligation of <. c of the parties by express declaration. It does not appear tnat the agents of the claimant on the presentation of the commissions of the inspectors refused to extend the “facilities of free travel” or protested against that construction of the Post-Office Department. So far as is known from the facts, the first time an issue was made by the company with the defendants upon their construction of the obligation of the railroad was when this suit was brought. The view which the court takes of the law makes it unnecessary to pass upon the question of the legal construction of the obligation of the claimant as to the transportation of the special agents of the Department; that construction has in the opinion of the court been determined by the express declaration of the defendants and the silent acquiescence of the claimant. The construction, conceding it to be doubtful, was determined during the performance of the service, and to permit another in the suit incident to that service would be a violation of the legal rights of the defendants. Although the principle of estoppel is not favored in the law, its application often performs the highest office of judicial justice. In the case of Alvord (8 C. Cls. R., 364) it is in substance held, where the Postmaster-General has the legal right to curtail the public expenditure by discontinuing a special service and distinctly informs the contractor that he will do so if a disputed claim for other services be pressed, then the contractor is bound in equity and good conscience to inform the Postmaster-General that he does not acquiesce in his decision. His silence must be construed to have been intended to influence the con *438 duct of tlie Postmaster-General, and lead him to a line of conduct prejudicial to the interest of the Government and it constitutes the very essence of an estoppel in pais.
So it was held in the case of Wilson (25 id., 339) a long acquiescence by a soldier in an executive construction of a statute is binding upon him.
It was decided in the case of Merriam (20 id., 290), that if the Government permits a party by its acquiescence to believe he is complying with the terms of an agreement, in a matter which he might remedy, it will be estopped from insisting on a different construction.
Incident to the litigation between the individual and the sovereign, the settled principles of the law have the same force and application as between individuals of the community contesting their legal rights in the forum of judicial examination.
If the Post-Office Department had been apprised in apt time of the adverse construction of the claimant it would have given it an opportunity of shaping its policy with reference to that construction} but not having notice of such construction it had a right to assume from the silence of the claimant that it acquiesced in that view of the railroad’s obligation. The duty of the parties to assert their alleged right with reasonable diligence is forcibly stated in a well recognized principle of equity, “In equity, therefore,- where a man has been silent when in conscience he ought to have spoken he shall be debarred from speaking when conscience requires him to keep silent.” (Bigelow on Estoppel, p. 453 note; Ford, 17 C. Cls. R., 61; Newton, 18 id., 435; Duryeas, 17 id., 24.)
While the statute specifically imposes upon the company the duty to carry the mails upon certain terms and conditions, it is the discharge of its duty as a common carrier giving to the defendants such peculiar facilities of transportation as originate from the exceptional character of the service, and if a recovery can be had in this proceeding it must be on the basis of contract between the parties.
Is it expressed or implied in the transaction that the defendants were to pay for the transportation of the special agents? If it is not, then no obligation can arise.
In the case of Cary v. Curtis (3 Howard, 247, 248, 249), in discussing the elements of an implied contract, court say:
“Another principle held to be fundamental to this action is *439 tbis: that there must exist a privity between the plaintiff and defendant, something on which an obligation, an engagement, a promise from the latter to the former can be implied, for if such implication be excluded from the relation between the parties by positive law or by inevitable legal intendment every foundation for the promise and of the action upon it is destroyed, for none can be presumed or permitted to promise what either law or reason does not warrant or actually forbid.
“ * * * When snch implication or intendment is excluded, forbidden by the position of the parties, by positive law, or by the character of the transaction, consent, or any obligation upon which to imply it, is entirely removed. * * *■ Moreover, the law will never imply a promise where it would be unjust to the party to whom it would be imputed and contrary to equity so to imply it.” (Ib., p. 249.)
To deduce from the facts an obligation upon the pa: ü of the defendants to pay for the transportation of the special agents would be in direct violation of the contemporaneous construction of the obligation given by both parties during the performance of the service. “ When the words of an instrument are ambiguous the court will call in aid acts done under it as a clue to the intention.” (Broom’s Legal Maxims, 682.)
The same principle is applicable to the contention in this case. Whatever may have been the rights of the claimant originally to charge for the transportation of the special agents, it is too late for it to successfully contend for such compensation after the services had been rendered under the belief upon the part of the defendants that such transportation was in pursuance of the order and regulations that it .was to be without cost to the defendants.
It is the judgment of the court that the claimant is not entitled to recover, and the petition is, therefore, dismissed.
Nott, J., did not sit in this case and took no part in the decision.